IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

ANA E. ROMERO HERNÁNDEZ,

    Plaintiff,

    v.

COMMISSIONER OF SOCIAL SECURITY,

    Defendant.

CIVIL NO.: 18-1927 (MEL)

**OPINION AND ORDER**

Pending before the court is Ms. Ana E. Romero Hernández's ("Plaintiff") appeal from the decision of the Commissioner of Social Security ("the Commissioner") denying her application for disability benefits under the Social Security Act. ECF No. 13. Plaintiff challenges the administrative law judge's determination at step two of the sequential process regarding the evaluation of the severity of her mental and physical impairments. It is also claimed by Plaintiff, among other allegations, that the administrative law judge erred at step three of the sequential process by not finding that she met the requirements of Listings 1.02 and 1.04.

**I.    Procedural and Factual Background**

On March 7, 2013, Plaintiff filed an application for Social Security benefits alleging that on July 28, 2012 ("the onset date"), she became unable to work due to disability. Tr. 39.[1] Prior to the onset date, Plaintiff worked as a police officer and dental assistant. Tr. 51. Plaintiff met the insured status requirements of the Social Security Act through December 31, 2017. Tr. 41. Plaintiff's disability claim was denied on July 24, 2013, and upon reconsideration. Tr. 39. Thereafter, Plaintiff requested a hearing which was held on July 8, 2016 before Administrative

---

[1] "Tr." refers to the transcript of the record of proceedings.

Law Judge Hortensia Haaversen ("the ALJ"). Tr. 60-76. On September 16, 2016, the ALJ issued a written decision finding that Plaintiff was not disabled. Tr. 54. Thereafter, Plaintiff requested review of the ALJ's decision. The Appeals Council denied Plaintiff's request for review, rendering the ALJ's decision the final decision of the Commissioner, subject to judicial review. Tr. 1-4. Plaintiff filed a complaint on December 3, 2018. ECF No. 1. Both parties have filed supporting memoranda. ECF Nos. 13, 16.

## II.     Legal Standard

### A. Standard of Review

Once the Commissioner has rendered a final determination on an application for disability benefits, a district court "shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing [that decision], with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). The court's review is limited to determining whether the ALJ employed the proper legal standards and whether his factual findings were founded upon sufficient evidence. Specifically, the court "must examine the record and uphold a final decision of the Commissioner denying benefits, unless the decision is based on a faulty legal thesis or factual error." López-Vargas v. Comm'r of Soc. Sec., 518 F. Supp. 2d 333, 335 (D.P.R. 2007) (citing Manso-Pizarro v. Sec'y of Health & Human Servs., 76 F.3d 15, 16 (1st Cir. 1996) (per curiam)).

Additionally, "[t]he findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971). The standard requires "'more than a mere scintilla of evidence but may be somewhat less than a preponderance' of the evidence." Ginsburg

v. Richardson, 436 F.2d 1146, 1148 (3d Cir. 1971) (quoting Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966)).

While the Commissioner's findings of fact are conclusive when they are supported by substantial evidence, they are "not conclusive when derived by ignoring evidence, misapplying the law, or judging matters entrusted to experts." Nguyen v. Chater, 172 F.3d 31, 35 (1st Cir. 1999) (per curiam) (citing Da Rosa v. Sec'y of Health & Human Servs., 803 F.2d 24, 26 (1st Cir. 1986) (per curiam); Ortiz v. Sec'y of Health & Human Servs., 955 F.2d 765, 769 (1st Cir. 1991) (per curiam)). Moreover, a determination of substantiality must be made based on the record as a whole. See Ortiz, 955 F.2d at 769 (citing Rodríguez v. Sec'y of Health & Human Servs., 647 F.2d 218, 222 (1st Cir. 1981)). However, "[i]t is the responsibility of the [ALJ] to determine issues of credibility and to draw inferences from the record evidence." Id. Therefore, the court "must affirm the [Commissioner's] resolution, even if the record arguably could justify a different conclusion, so long as it is supported by substantial evidence." Rodríguez Pagán v. Sec'y of Health & Human Servs., 819 F.2d 1, 3 (1st Cir. 1987) (per curiam).

### B. Disability under the Social Security Act

To establish entitlement to disability benefits, a plaintiff bears the burden of proving that he is disabled within the meaning of the Social Security Act. See Bowen v. Yuckert, 482 U.S. 137, 146 n.5, 146–47 (1987). An individual is deemed to be disabled under the Social Security Act if he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

Claims for disability benefits are evaluated according to a five-step sequential process. 20 C.F.R. § 404.1520; Barnhart v. Thomas, 540 U.S. 20, 24–25 (2003); Cleveland v. Policy Mgmt. Sys. Corp., 526 U.S. 795, 804 (1999); Yuckert, 482 U.S. at 140–42. If it is determined that plaintiff is not disabled at any step in the evaluation process, then the analysis will not proceed to the next step. 20 C.F.R. § 404.1520(a)(4). At step one, it is determined whether plaintiff is working and thus engaged in "substantial gainful activity." 20 C.F.R. § 404.1520(a)(4)(i). If he is, then disability benefits are denied. 20 C.F.R. § 404.1520(b). Step two requires the ALJ to determine whether plaintiff has "a severe medically determinable physical or mental impairment" or severe combination of impairments. 20 C.F.R. § 404.1520(a)(4)(ii). If he does, then the ALJ determines at step three whether plaintiff's impairment or impairments are equivalent to one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. 20 C.F.R. § 404.1520(a)(4)(iii). If so, then plaintiff is conclusively found to be disabled. 20 C.F.R. § 404.1520(d). If not, then the ALJ at step four assesses whether plaintiff's impairment or impairments prevent him from doing the type of work he has done in the past. 20 C.F.R. § 404.1520(a)(4)(iv).

In assessing an individual's impairments, the ALJ considers all of the relevant evidence in the case record to determine the most the individual can do in a work setting despite the limitations imposed by his mental and physical impairments. 20 C.F.R. § 404.1545(a)(1). This finding is known as the individual's residual functional capacity ("RFC"). Id. If the ALJ concludes that plaintiff's impairment or impairments do prevent him from performing his past relevant work, the analysis proceeds to step five. At this final step, the ALJ evaluates whether plaintiff's RFC, combined with his age, education, and work experience, allows him to perform any other work that is available in the national economy. 20 C.F.R. § 404.1520(a)(4)(v). If the

ALJ determines that there is work in the national economy that plaintiff can perform, then disability benefits are denied. 20 C.F.R. § 404.1520(g).

### C. The ALJ's Decision

In the case at hand, the ALJ found that Plaintiff met the insured status requirements of the Social Security Act through December 31, 2017. Tr. 41. Then, at step one of the sequential evaluation process, the ALJ found that Plaintiff had not engaged in substantial gainful activity during the relevant period. Id. At step two, the inquiry as to severe impairments resulted in the ALJ determining that Plaintiff had the following severe impairments: degenerative disc disease with peripheral neuropathy and carpal tunnel syndrome. Id. At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. Tr. 45. Next, the ALJ determined that during the relevant period

> [Plaintiff] has the residual functional capacity to perform light work as defined in 20 C.F.R. 404.1567(b), including lifting and carrying 20 pounds occasionally and 10 pounds frequently; standing and/or walking 6 hours of an 8 hour workday, and sitting 6 hours of an 8 hour workday. She can frequently climb ramps and stairs, balance, kneel, and crouch; occasionally climb ladders, ropes and scaffolds; stoop, and crawl. The claimant can frequently handle and finger with both upper extremities.

Tr. 46. At step four, the ALJ determined that through the date last insured, Plaintiff could not perform her past relevant work as a police officer or dental assistant. Tr. 51-52. At step five, the ALJ presented Plaintiff's RFC limitations, as well as her age, education, and work experience to a vocational expert. Tr. 52. The vocational expert testified that an individual with a similar RFC would be able to perform the following representative occupations: counter clerk, account investigator, and rental consultant. Tr. 52-53, 71-72. In the alternative, the ALJ asked the vocational expert whether jobs exist in the economy for an individual with the claimant's age,

education, and work experience, but with a RFC for sedentary work, "with occasional lifting up to 10 pounds and less than 10 pounds frequently. Standing or walking 2 hours in an 8 hour work day. Sitting 6 hours in a 8 hour work day. In addition to the limitations of the first hypothetical." Tr. 53, 72. In response, the vocational expert testified that an individual with a similar RFC would be able to perform the following representative occupations: surveillance system monitor and information clerk. Tr. 53, 72. Because there was work in the national economy that Plaintiff could perform, the ALJ concluded that she was not disabled. Tr. 53-54.

### III. Legal Analysis

Plaintiff objects to the ALJ's final decision denying her disability benefits on three grounds. First, Plaintiff argues that the ALJ erred in evaluating her mental and physical impairments at step two of the sequential process. ECF No. 13, at 10, 16. Next, it is claimed by Plaintiff that the ALJ erred by not finding that she satisfied the requirements of Listings 1.02 and 1.04. Id. at 12-13. Lastly, Plaintiff alleges that the ALJ erred in determining that Plaintiff had the RFC to perform light work. Id. at 13.

#### A. The ALJ's Step Two Determination

Plaintiff argues that the ALJ erred in finding that her depressive disorder was non-severe. Id. at 16. In evaluating the severity of a claimant's medically determinable mental impairment, the ALJ rates the degree of functional limitation caused by said impairment. See 20 C.F.R. § 404.1520a(b)(2). The ALJ assesses the degree of functional impairment resulting from four broad functional areas: (1) activities of daily living; (2) social functioning; (3) concentration, persistence, or pace; and (4) episodes of decompensation. Id. at § 404.1520a(c)(3); 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00. If the degree of limitation in each of the first three areas is

evaluated as mild or better, and there are no episodes of decompensation, the ALJ will generally conclude that the claimant's mental impairment is not severe. See 20 C.F.R. § 404.1520a(d)(1).

In the case at bar, the ALJ determined that Plaintiff had a mild restriction in the area of activities of daily living. Tr. 44. The ALJ noted that Plaintiff alleged being dependent of others for performing self-care or daily activities in her function report. Tr. 44, 106-109. The ALJ, however, noted that no treating physician or consultant reported that Plaintiff had limitations in this area of mental functioning. Tr. 44. Examining psychiatrist Dr. Luis A. Toro ("Dr. Toro") indicated that Plaintiff reported taking care of her own personal needs without supervision and that her family members helped her occasionally with household tasks. Tr. 403. Upon examination, Dr. Toro found that Plaintiff was well-nourished and well-groomed, and able to handle funds adequately. Tr. 404. Furthermore, in her function report, Plaintiff reported being able to prepare her own meals and that she helps with laundry. Tr. 99.

Second, the ALJ determined that Plaintiff had mild limitations in the area of social functioning. Tr. 44-45. Dr. Toro noted Plaintiff to be cooperative, with spontaneous, coherent, and relevant speech, no evidence of unusual behavior or delusions, and found her capable of normal interpersonal relationships. Tr. 404. Dr. Toro also noted that Plaintiff reported that she got along well with her husband, children, and neighbors, and also got along well with coworkers and supervisors when she was employed. Tr. 403. Treating family practitioner Dr. Vanessa Ramírez Zapata ("Dr. Ramírez") indicated that Plaintiff had appropriate verbal expression, calm attitude, and appropriate affect. Tr. 113. In her function report, Plaintiff indicated that she attended church, had good relationships with friends, family and others, got along well with authority figures, and had not been laid off or suspended from work because of problems dealing with other people. Tr. 101-02.

In assessing Plaintiff's concentration, persistence, or pace, the ALJ found that Plaintiff had only mild restrictions in this area of mental functioning. Tr. 45. The ALJ conceded that treating general practitioner Luis Rivera Quiñones's ("Dr. Rivera") June 2014 progress notes indicated that Plaintiff had diminished concentration and insight. Tr. 45, 117. However, subsequent progress notes from Dr. Ramírez in July 2014 showed that Plaintiff was well oriented, had intact memory, adequate concentration, good judgment, and adequate insight. Tr. 114-15. Furthermore, Dr. Toro's consultative examination report indicated that Plaintiff's attention, concentration, and retention were normal and that her judgment and reasoning were not impaired. Tr. 404. Lastly, Plaintiff did not cite to any evidence of repeated episodes of decompensation. Tr. 45.

The ALJ's determination is also supported by the opinion of state agency consultant psychologist Dr. Janice Calderón ("Dr. Calderón") who reviewed the record and concluded that Plaintiff had only mild limitations in the areas of mental functioning and no episodes of decompensation. Tr. 171-72. State agency consultant psychologist Dr. Bárbara Hernández ("Dr. Hernández") reviewed the record at the reconsideration level and concurred with the opinion of Dr. Calderón. Tr. 186-87.

Plaintiff argues that her depressive disorder is severe because she was diagnosed with major depressive disorder and that she received medication for anxiety and depression. ECF No. 13, at 16. A mental health diagnosis and evidence of treatment, however, are insufficient alone to establish a severe impairment. See Sitar v. Schweiker, 671 F.2d 19, 20-21 (1st Cir. 1982) ("severe anxiety or depression is not in itself sufficient to establish eligibility for benefits absent a proper showing of related functional loss."); Merced v. Astrue, Civ No. 10-1253, 2012 WL 1110599, at *5 (D.P.R. Mar. 30, 2012) ("For an impairment to be severe, it must significantly

limit a claimant's ability to perform basic work activities.") (citing 20 CFR § 404.1520(c)). Plaintiff has not carried her burden to demonstrate that her depressive disorder constituted a severe impairment. The ALJ's determination that Plaintiff's depressive disorder was non-severe is supported by substantial evidence.

Plaintiff also argues that the ALJ erred in determining that her obesity and thyroid cyst did not constitute severe impairments. ECF No. 13, at 3, 5. As stated earlier, "an impairment or combination of impairments is 'severe' if it significantly limits a claimant's ability to perform basic work activities." Barrientos v. Sec'y of Health and Human Servs., 820 F.2d 1, 2 (1st Cir. 1987) (citing 20 C.F.R. § 404.1520(c)). In June 2013, Plaintiff underwent a thyroid sonogram which revealed a 0.2 cm cyst in the upper pole of the right lobe. Tr. 446. The ALJ noted, however, that the record did not reflect any "ongoing treatment for this condition or limitations associated to the mentioned thyroid lobe." Tr. 41. In her brief, Plaintiff did not cite to any medical evidence regarding her thyroid cyst to show that it significantly limited her ability to perform basic work activities. Thus, the ALJ did not err in finding that this condition did not constitute a severe impairment.

Regarding her obesity, the ALJ noted that treating general practitioner Dr. Luis E. Arocho Hernández ("Dr. Arocho") indicated that Plaintiff had a body mass index ("BMI") of 30, indicating that she is obese. Tr. 42, 137-38. A diagnosis of obesity, however, is not a severe impairment per se and it must significantly limit a claimant's ability to do basic work activities to constitute a severe impairment. See Drew v. Astrue, Civ. No. 9-363, 2010 WL 1946335, at *4 (D. Me. May 12, 2010); SSR 02-1P, 2002 WL 34686281, at *4 (2002) ("As with any other medical condition, we will find that obesity is a 'severe' impairment when, alone or in combination with another medically determinable physical or mental impairment(s), it

9

significantly limits an individual's physical or mental ability to do basic work activities."). The ALJ found that although Plaintiff was considered obese, there was no medical evidence that Plaintiff's weight individually or in combination with other impairments imposed greater limitations than those assessed. Tr. 42. In her brief, Plaintiff does not cite to specific medical evidence that her obesity significantly limited her ability to do basic work activities. Thus, the ALJ properly considered Plaintiff's obesity and determined that it did not constitute a severe impairment.

### B. The ALJ's Step Three Determination

Next, Plaintiff alleges that the ALJ erred at step three of the sequential process by not finding that she satisfied the requirements of Listings 1.04 and 1.02. ECF No. 13, at 11-13. A claimant bears the burden to demonstrate that he meets all the specified duration and objective medical requirements of a Listing. See Sullivan v. Zebley, 493 U.S. 521, 530 (1990) ("For a claimant to show that his impairment matches a listing, it must meet all of the specified medical criteria. An impairment that manifests only some of those criteria, no matter how severely, does not qualify."). Listing 1.04 is a musculoskeletal impairment listing related to disorders of the spine. In order to satisfy Listing 1.04, a claimant must demonstrate

> (1) a disorder of the spine (such as herniated nucleus pulposus or degenerative disc disease) which compromises the nerve root or spinal cord, with
>
> (A) evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of spinal motion, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight leg raising test (sitting and supine); or
>
> (B) spinal arachnoiditis, confirmed by an operative note or pathology report of tissue biopsy, or by appropriate medically acceptable imaging, manifested by severe burning or painful dysesthesia, resulting in the need for changes in position or posture more than once every 2 hours; or

> (C) lumbar spinal stenosis resulting in pseudoclaudication, established by findings on appropriate medically acceptable imaging, manifested by chronic nonradicular pain and weakness, and resulting in inability to ambulate effectively.

See MacNeil v. Astrue, 908 F. Supp. 2d 259, 264-65 (D. Mass. 2012) (citing 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.04).

In the case at hand, Plaintiff claims that examining consultant neurologist Dr. Winston R. Ortiz's ("Dr. Ortiz") examination report demonstrates that Plaintiff's impairments meet Listing 1.04, although she does not specify which subsection of Listing 1.04 applies. ECF No. 13, at 12. Plaintiff's only argument is that Dr. Ortiz's impressions included a lumbosacral strain and cervical disc herniations at C3-4 and C5-6 levels. Tr. 407. Dr. Ortiz's impressions alone, however, are insufficient to establish that all the objective medical criteria of Listing 1.04 are satisfied. In her decision, the ALJ determined that Plaintiff did not meeting Listing 1.04(A) because the record did not establish the existence of motor loss accompanied by sensory or reflex loss. Tr. 46. The ALJ also determined that Plaintiff did not meet Listing 1.04(B) because a diagnosis of spinal arachnoiditis was not reflected in the record. Id. Lastly, the ALJ found that there was no lumbar stenosis resulting in pseudoclaudication documented by medically acceptable imaging as required by Listing 1.04(C). Id. Plaintiff has not cited to any evidence on the record to discredit the ALJ's findings as to Listing 1.04. Thus, the ALJ's determination that Plaintiff did not meet the requirements of Listing 1.04 is supported by substantial evidence.

Plaintiff's argument that her bilateral carpal tunnel syndrome meets the requirements of Listing 1.02 also fails. ECF No. 13, at 13. Listing 1.02 requires

> gross anatomical deformity (e.g., subluxation, contracture, bony or fibrous ankylosis, instability) and chronic joint pain and stiffness with signs of limitation of motion or other abnormal motion of the affected joint(s), and findings on appropriate medically acceptable imaging of joint space narrowing, bony destruction, or ankylosis of the affected joint(s). With:

>    A. Involvement of one major peripheral weight-bearing joint (i.e., hip, knee, or ankle), resulting in inability to ambulate effectively, as defined in 1.00B2b; [or]
>
>    B. Involvement of one major peripheral joint in each upper extremity (i.e., shoulder, elbow, or wrist-hand), resulting in inability to perform fine and gross movements effectively, as defined in 1.00B2c.

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.02.

Plaintiff claims that she satisfies the requirements of Listing 1.02 because she has bilateral carpal tunnel syndrome. ECF No. 13, at 13. Plaintiff's argument is unavailing because she has not cited to any evidence of a gross anatomical deformity,[2] and thus, has not carried her burden of establishing all the requirements of Listing 1.02. In her decision, the ALJ noted that the only Nerve Conduction Study of Plaintiff's upper extremities evidenced "mild" findings and did not include all the requirements of Listing 1.02. Tr. 46, 379. The ALJ committed no error at step three by determining that Plaintiff's condition did not meet the level of severity required by Listing 1.02. See Blamire v. Colvin, Civ. No. 14-212, 2015 WL 3398145, at *5 (D.N.H. May 26, 2015).

### C. The ALJ's RFC Determination

Plaintiff also claims that the ALJ erred in determining that she had the RFC to perform light work. ECF No. 13, at 13. Plaintiff specifically argues that in assessing her RFC, the ALJ did not properly consider Dr. Ortiz's opinion and erroneously disregarded her testimony regarding her functional limitations. Id. at 14-16. An RFC assesses the most a claimant can still do despite his limitations. See 20 C.F.R. §§ 404.1545(a), 416.945(a). Under the regulations, the ALJ has the responsibility to synthesize complex medical data and determine a claimant's RFC based upon the entire record. See 20 C.F.R. §§ 404.1527(d)(2), 404.1546(c). The claimant,

---

[2] "The common medical definition of gross refers to coarse or large and visible to the naked eye without the use of magnification." See Igo v. Colvin, 839 F.3d 724, 729 (8th Cir. 2016) (citations omitted).

however, has the burden of providing evidence to establish how his impairments limit his RFC. See Freeman v. Barnhart, 274 F.3d 606, 608 (1st Cir. 2001).

First, Plaintiff alleges that the ALJ erred in not properly considering Dr. Ortiz's impressions. ECF No. 13, at 14. In June 2013, Dr. Ortiz diagnosed Plaintiff with bilateral carpal tunnel syndrome, found there was weakness (3/5) of grip and pincer grasp bilaterally, and indicated that she had difficulty picking up a coin, tying shoes, holding a pen to write, tapping the fingers, and buttoning clothing. Tr. 407. Dr. Ortiz opined that Plaintiff was markedly impaired in "sitting, standing, walking, lifting, carrying handling objections and traveling." Id. Furthermore, Dr. Ortiz found that Plaintiff was unable to bend, stoop, kneel, and squat. Id.

The ALJ accorded Dr. Ortiz's opinion little weight because he only examined Plaintiff once and his "assessment is vague and inconsistent with other substantial evidence in the record." Tr. 50. Dr. Ortiz's conclusions are not supported by his examination results which showed that Plaintiff did not use a cane, had no muscle atrophy or loss of muscle tone, had a normal sensory system, mostly normal reflexes except for diminished ankle jerks bilaterally, and a normal range of motion in her hips, shoulders, elbows, ankles, knees, and wrist. Tr. 406-07, 410-11. The ALJ noted that while Plaintiff was diagnosed with carpal tunnel syndrome, she did not require surgical intervention and a Nerve Conduction Study yielded only "mild" findings. Tr. 50, 379. The ALJ also found that Dr. Ortiz's finding of marked limitations for sitting, standing, and walking were inconsistent with the March 2016 physical examination conducted by Dr. Arocho which reported normal findings. Tr. 135-36. Dr. Arocho indicated that Plaintiff had a normal gait, the musculoskeletal examination did not present pain or tenderness, and that the neurological examination did not evidence weakness, tremors, or paralysis. Tr. 135.

13

The ALJ also found that Dr. Ortiz's opinion was not consistent with state agency consultant internist Dr. Ulises Meléndez ("Dr. Meléndez") who reviewed the record and opined that Plaintiff had the capacity to lift and/or carry 20 pounds occasionally and 10 pounds frequently. Tr. 173. Dr. Meléndez also found that Plaintiff could stand and/or walk for a total of 6 hours in an 8 hour workday, sit for 6 hours in a 8 hour workday, with unlimited pushing and pulling other than the weight limitations for lifting and/or carrying. Id. Furthermore, Plaintiff was assessed as being able to climb ramps/stairs frequently, balance frequently, kneeling and crouching frequently, and crawling occasionally. Tr. 174. Dr. Meléndez limited Plaintiff to frequent handling and fingering with both upper extremities. Id. Thus, the record reflects that the ALJ properly considered Dr. Ortiz's opinion in her RFC determination.

Next, Plaintiff argues that the ALJ erred in not finding her subjective allegations regarding her physical functional limitations credible. ECF No. 13, at 15; Tr. 51. The ALJ must consider a claimant's symptoms in determining whether the claimant is disabled. See 20 C.F.R. § 404.1529(a). First, the ALJ must decide whether a claimant suffers from a medically determinable impairment that could reasonably be expected to produce the symptoms alleged. Id. at § 404.1529(b). Then, the ALJ must evaluate the intensity and persistence of a claimant's symptoms and consider whether the symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence of record documenting Plaintiff's limited capacity for work. Id. at § 404.1529(c).

In the case at hand, the ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms. Tr. 51. Then, it was determined by the ALJ that Plaintiff's allegations regarding the intensity, persistence, and limiting effects of her symptoms were "not entirely consistent with the medical evidence and other evidence in the

record." Id. The ALJ determined that Plaintiff's alleged manipulative conditions were not entirely consistent with the Nerve Conduction Study which revealed only "mild" findings. Tr. 51, 379. The ALJ also found that Plaintiff's allegations of inability to sit or stand for long were inconsistent with an October 2012 MRI of her lumbar spine which evidenced normal findings. Tr. 51, 391. Furthermore, the ALJ noted that the physical examination conducted by Dr. Arocho in March 2016 reported normal findings. Tr. 50-51, 452. Dr. Arocho found that Plaintiff had a normal gait, the musculoskeletal examination did not present pain or tenderness, and the neurological examination did not show weakness, tremors, or paralysis. Tr. 452. Thus, the ALJ's determination to disregard Plaintiff's allegations regarding her physical functional limitations is supported by substantial evidence.

**IV.   Conclusion**

Based on the foregoing analysis, the court concludes that the decision of the Commissioner that Plaintiff was not entitled to disability benefits was supported by substantial evidence. Therefore, the Commissioner's decision is hereby AFFIRMED.

IT IS SO ORDERED.

In San Juan, Puerto Rico, this 26th day of August, 2020.

s/Marcos E. López
U.S. Magistrate Judge
